Ontario Carvon WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–00–069 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 23, 2001.

Decided Feb. 7, 2001.

Rehearing Overruled March 15, 2001.

Ernest Barrientos, Conroe, for appellant.

Michael A. McDougal, Dist. Atty., Marc Brumberger, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., BURGESS, and GAULTNEY, JJ.

## OPINION

GAULTNEY, Justice.

A jury found Ontario Carvon Williams ("Williams") guilty of murder of Ibn–Yasin Joseph ("Joseph") and assessed punishment at forty-five (45) years confinement in the Texas Department of Criminal Justice—Institutional Division. On appeal, Williams contends the trial court erred in refusing to instruct the jury on the issues of self-defense and sudden passion.

### BACKGROUND FACTS

Williams' version of the events is detailed below:

1. Williams had developed a father-son relationship with four year old Demarcus, his stepson.
2. In May and in early June 1999, Williams found out that Joseph had recently spanked Demarcus—once with a switch and another time with a belt.
3. On June 9, 1999, Williams and Joseph had a confrontation initiated by Williams.
4. Williams wanted to talk to Joseph about the spankings and wanted to hit Joseph with a belt.
5. Joseph and Williams discussed the spankings.
6. Williams took off his belt and struck Joseph several times.
7. Williams used a belt because "[Joseph] hit my son with the belt."
8. Joseph did not have a gun. Before exiting his car, Williams had pulled a .357 revolver from under the seat and stuck it in his pants.
9. While Williams was striking Joseph with the belt, Joseph grabbed Williams around the waist, and, according to Williams, tugged at the gun.
10. During the struggle for the gun, Joseph tried to shoot him. As Williams pushed the gun away from his face, "that['s] when the

gun went off." The bullet struck the vehicle beside the two men.

11. At one point, Williams knocked Joseph down and was able to gain control of the gun. While Williams was standing there with the gun in his hand, Joseph stood up and asked if Williams was going to shoot him. Williams replied that he was not.

12. After Williams told Joseph he was not going to shoot him and while Williams was backing up, Joseph ran towards him. "[W]hen I shot him, he was still coming towards me and as he got up on me, he grabbed me and when he grabbed me, I pushed him down like this (indicating) with the gun still in my hand." "And as he fell, I shot him again." Williams thought that "if [Joseph] took this gun away from me[,] he was going to shoot me." "Because he had just tried to shoot me in the face."

13. Williams testified he believed Joseph was going to kill him because Joseph had threatened his life a few days earlier, Joseph was known for carrying a gun, and Joseph had just tried to shoot him during their struggle.

Although there is considerable evidence in the record that conflicts with Williams' version of the events, we view the evidence in a light favorable to him in determining whether defensive issues should have been submitted to the jury. *See Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Crim.App.1984).

## SELF–DEFENSE INSTRUCTION

■ Williams first contends the trial court erred in refusing his request for a self-defense instruction. The required elements for self-defense involving the use of deadly force are set out in TEX. PEN.CODE ANN. § 9.32 (Vernon Supp.2001):(1) The person would have been justified in using force against the other under TEX. PEN. CODE ANN. § 9.31 (Vernon Supp.2001); (2)

a reasonable person in the same situation would not have retreated, and (3) he reasonably believed that the deadly force was immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. "Reasonable belief" is defined by the Texas Penal Code as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PEN.CODE ANN. § 1.07(a)(42) (Vernon 1994).

Under section 9.31, "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PEN.CODE ANN. § 9.31(a) (Vernon Supp.2001). However, the statute also expressly provides that the use of force is not justified under certain proscribed circumstances. One example is provocation—a person is not justified in using force if he provokes the other's use or attempted use of unlawful force. *See* TEX. PEN.CODE ANN. § 9.31(b)(4) (Vernon Supp.2001). Another instance when force is not justified, and the one at issue in this case, is when the actor seeks an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor is carrying a weapon in violation of TEX. PEN.CODE ANN. § 46.02 (Vernon Supp. 2001). *See* TEX. PEN.CODE ANN. § 9.31(b)(5) (Vernon Supp.2001).

■ The State contends the trial court was correct in refusing the self-defense instruction, because Williams' use of force against Joseph was not justified as a matter of law under section 9.31(b)(5). In contrast, Williams submits that the proper treatment of section 9.31(b)(5) is as a limiting instruction on a self-defense charge, not as an outright bar to a self-defense charge. He directs us to *Bumguardner v. State,* 963 S.W.2d 171, 174–75 (Tex.App.— Waco 1998, pet. ref'd), where the trial court included a self-defense instruction in the charge, along with an instruction under section 9 .31(b)(5) limiting the self-defense

charge. Williams is correct in pointing out that courts normally treat the section 9.31(b) list, setting out instances when force used in self-defense is not justified, as a limitation on self-defense. *See Dyson,* 672 S.W.2d at 463 ("Normally, provocation [section 9.31(b)(4) ] is a fact issue, and is included in the court's charge on self-defense as a limitation on that defense."). However, when the evidence establishes as a matter of law that force is not justified in self-defense, because, for example, the defendant provoked the difficulty, then no self-defense issue is required. *Id.* at 464–65.

 We agree that where there is a fact issue raised on any of the elements in the "carrying the gun to the discussion" section [section 9.31(b)(5) ], a defendant would be entitled to a self-defense charge if he satisfied the requirements of section 9.31(a); likewise, if raised by the evidence, an instruction limiting the self-defense charge would be warranted under section 9.31(b)(5), if the instruction is requested by the State. However, if the evidence is undisputed that force was not justified as a matter of law because of section 9.31(b)(5), then a self-defense instruction is barred.

It is undisputed that Williams told Joseph he "wanted to talk to him" and followed Joseph to the residence on Laurie Lane. Once there, Williams stopped his vehicle, intentionally pulled a handgun from under the seat, stuck it in his pants as he exited the car, and walked into the yard. There followed some talk about the broken reflector on Joseph's vehicle and Williams' response that a big orange plastic bat ["T-ball things"] "couldn't have broke that." "Regardless ... you [Joseph] should have came to us, we would have paid for it to replace it." At that point, Williams testified he started hitting Joseph with the belt.[1] Although Williams claims the evidence reveals he armed himself with a gun only to protect himself, the record also clearly shows that Williams intentionally sought out Joseph to confront him about the spanking incident and that he intentionally brought the handgun with him which he used to shoot Joseph, once in the chest and once in the back. On this evidence we are asked whether this conduct required a self-defense submission to the jury.

Under section 46.02, a person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club. *See* TEX.

---

1. At trial, Williams testified he carried a gun with him and drove to Huntsville two days before the shooting to "find out why [Joseph] continually continued to whoop my child when I had already asked him not to." Although Williams drove up to Joseph's cabin, he never saw Joseph that night. In his handwritten, signed statement to the police on the day of the shooting, Williams indicated that two days before the shooting Joseph had spanked Williams' son with a belt.

At trial, the following exchange occurred between Williams and his trial counsel during direct examination:

Q. [Trial Counsel]: Okay. Did you go to Laurie Lane [Mike Lingo's house] to have a discussion with Mr. Joseph?
A. [Williams]: Yes, ma'am, I did.
Q. Okay. What was your intent of telling him?
A. For him not to whip Demarcus no more, but I admit that I was going to hit him with my belt.

Later on cross examination, the following exchange took place between the prosecutor and Williams:

Q. [Prosecutor]: You told the police that you went there because this dude had spanked your son.
A. [Williams]: Right. Yes, sir.
Q. You wanted to settle your differences and talk with him about it.
A. Yes, sir. Yes, sir.
Q. Except you really didn't want to talk to him about it, did you?
A. No, sir.
Q. You wanted to take that belt, strike him as many times as you could—
A. Yes, sir.
Q. —give him a licking, right?
A. Yes, sir.

Williams previously had given a statement to the police indicating he went to the residence to discuss their differences. Williams admits that he confronted Joseph for two reasons: to discuss their differences and to beat Joseph with his belt.

PEN.CODE ANN. § 46.02 (Vernon Supp. 2001). No one disputes that Williams brought a handgun to the encounter. In addition to that evidence, the State presented a certified document from the Texas Department of Public Safety stating that a handgun license had not been issued to Ontario Carvon Williams, nor had he applied for one. Williams did not object to the admission of the document or seek to limit the purpose for which it was admitted; nor did he offer any evidence showing he carried the handgun legally. The evidence establishes as a matter of law that Williams sought an explanation or discussion with Joseph about their differences while Williams was illegally carrying a handgun. We find there was no fact issue raised regarding section 9.31(b)(5). As a matter of law, Williams was not justified in using force. The trial court did not err in refusing to instruct the jury on the issue of self-defense. Point of error one is overruled.

## SUDDEN PASSION INSTRUCTION

■ In point of error two, Williams claims the trial court erred when it denied his request at the punishment phase of the trial for a jury instruction on "sudden passion arising from adequate cause." In considering whether any evidence is raised on this issue, we review the record from both the guilt-innocence and punishment phases of trial. *See Hunt v. State,* 967 S.W.2d 917, 918–19 (Tex.App.—Beaumont, 1998, no pet.) (There is no requirement that the defendant reintroduce evidence from the guilt phase at the punishment phase.).

■ "Sudden passion" is no longer a guilt-innocence issue. *See Chimney v. State,* 6 S.W.3d 681, 700 (Tex.App.—Waco 1999, no pet.) Instead, "sudden passion" is a mitigating circumstance at the punishment phase of a murder trial. *See Benavides v. State,* 992 S.W.2d 511, 523 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). "Sudden passion" is "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PEN.CODE ANN. § 19.02(a)(2) (Vernon 1994). "Adequate cause" is a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *See* TEX. PEN.CODE ANN. § 19.02(a)(1) (Vernon 1994). If a defendant presents evidence of sudden passion, he is entitled to an instruction on this mitigating circumstance even if the evidence raising such an issue is strong, contradicted, weak, unimpeached or unbelievable. *See Perez v. State,* 940 S.W.2d 820, 822 (Tex.App.—Waco 1997, no pet.). The question is whether there was any evidence from which a rational jury could infer such passion. *See Moore v. State,* 969 S.W.2d 4, 11 (Tex.Crim.App. 1998).

■ We have already detailed the evidence submitted at the guilt-innocence portion of the trial, and similar evidence was recounted by Williams during the punishment phase. Williams sought out Joseph to confront him over the spanking issue. As Williams testified, Joseph had no gun or any other type of weapon. Indeed, Williams was the one who attacked Joseph with the belt and when Joseph tried to fend Williams off, a struggle ensued over Williams' gun. As Williams backed away from Joseph, Williams shot him twice—once in the chest and once in the back. Williams testified he was afraid Joseph would take the gun away from him and shoot him. However, a mere claim of fear does not establish sudden passion. *Crunk v. State,* 934 S.W.2d 788, 795 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Fear that demonstrates sudden passion must be that which commonly produces a degree of terror sufficient to render the mind incapable of cool reflection. *Id.* Here, Williams was holding the gun on Joseph, who was unarmed, and backing away from him in the yard in front of the

house; if fear was warranted, it would have been on Joseph's part. The record simply does not contain any evidence that Williams was incapable of cool reflection.

We hold the trial court did not err in refusing to give appellant a jury instruction on "sudden passion arising from an adequate cause" during the punishment phase of the trial. *Cf. Adanandus v. State*, 866 S.W.2d 210, 231 (Tex.Crim.App. 1993) ("[W]here the defendant initiates the criminal episode which leads to the victims's death and the victim was acting in an attempt to prevent the commission of the felony by the defendant, the victim's actions will not be viewed as constituting adequate cause from which sudden passion may arise for purposes of voluntary manslaughter."). Point of error two is overruled.

Having overruled both points of error, we affirm the judgment of the trial court.

AFFIRMED.