Michael S. ROGERS, Appellant,

v.

Tommy PEELER, Appellee.

No. 06–03–00166–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 25, 2004.

Decided Oct. 1, 2004.

Eric M. Albritton, Eric M. Albritton, PC, T. John Ward Jr., Law Office of T. John Ward, Jr., PC, Odis R. Hill, Longview, for appellant.

Michael L. Dunn, Smead, Anderson & Dunn, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Tommy Peeler and Michael S. Rogers were adjoining landowners who had an ongoing boundary line dispute. Rogers shot and severely injured Peeler during a confrontation over Rogers crossing over onto Peeler's property while riding a four-wheeler. Peeler sued Rogers for this assault, seeking compensatory and punitive damages.[1] The jury returned a verdict awarding Peeler $1,250,000.00 in damages, and the trial court rendered judgment in accordance with the jury's verdict. Rogers appeals, complaining of the trial court's instruction to the jury limiting his right of self-defense, as well as the trial court's admission of evidence of other incidents of violence where Rogers claimed self-defense. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

The evidence presented at trial showed that Rogers and Peeler owned adjacent tracts of land in the Sabine River bottom. Beginning in late 1995, the two neighbors had a series of disputes concerning the boundaries of their properties. The last of these arguments occurred in early 1996. For six years, Rogers and Peeler had no contact with one another.

On November 9, 2002, Rogers and three companions were riding four-wheelers in the river bottom on Rogers' property. The two men in the group, Rogers and his friend Daniel Giles, were carrying firearms because, according to their testimony, they

---

1. Peeler later abandoned his pursuit of puni- tive damages.

anticipated coming into contact with wild hogs and snakes. Members of the group testified that, during the excursion, they became lost in the thick brush of the river bottom.

Rogers saw Peeler on a tractor, mowing a nearby area, and that was when he knew he was on Peeler's property. Rogers testified he then approached Peeler to explain that he was lost and to ask Peeler's permission to take a right-of-way back to his own property. Peeler shut down his tractor and mower. Rogers told Peeler the group was lost, to which Peeler responded, "Bullshit." According to Peeler, the conversation ended with Rogers calling Peeler a "stupid S.O.B." Rogers turned to leave, and Peeler went toward him and threw his cell phone at Rogers, hitting him on the head.

At this point, the parties' versions of events differ markedly. Peeler alleges that, when he was about two to eight feet from Rogers, he heard the velcro on Rogers' pistol holster and, recognizing what was about to happen, he turned to run away. Rogers then shot Peeler in the back. The gunshot wounds indicate Peeler was shot in the back of his left shoulder and the back of his left armpit.[2]

Rogers testified that, after Peeler hit him with the cell phone, Peeler jumped on him, causing the four-wheeler to turn over. During the ensuing struggle, Rogers said he began to fear for his life and shot Peeler. Rogers testified Peeler had previously threatened to kill Rogers, his dogs, and other people. Rogers admitted having consumed at least six to eight beers in the two hours preceding this encounter with Peeler.

Gregg County Sheriff's Deputy Cecil Shelton testified Peeler's shirt showed no signs that the weapon was fired in close contact with Peeler. For instance, there was no "tattooing," a term used to describe the powder speckling the area where the bullet entered the article of clothing. There was also no mud inside the handlebars or inside the wheels of the four-wheeler to indicate the vehicle had been turned over in the manner described by Rogers.

Rogers contended at trial he acted in self-defense. To rebut this theory, Peeler presented evidence of two prior incidents in which Rogers shot a handgun during a confrontation and later claimed he acted in self-defense. The trial court instructed the jury on the issue of self-defense. Over Rogers' objection, the trial court also instructed the jury that self-defense was unavailable to Rogers if it found that Rogers had sought a discussion with Peeler concerning their differences and that, while doing so, Rogers was unlawfully carrying a weapon.

## II. SUBMISSION OF JURY INSTRUCTION

### A. Standards of Review

We review a trial court's decision to submit an instruction for an abuse of discretion. *Goose Creek Consol. Indep. Sch. Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 499 (Tex.App.-Texarkana 2002, pet. denied). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, the question is whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

### B. Applicable Law

#### 1. Assault

---

**2.** As a result of these wounds, Peeler's left arm had to be amputated below the elbow.

■ The definition of assault is the same, whether in a civil or criminal trial. *Forbes v. Lanzl,* 9 S.W.3d 895, 900 (Tex. App.-Austin 2000, pet. denied). A person commits assault under the Penal Code if the person intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PEN.CODE ANN. § 22.01 (Vernon Supp. 2004–2005).

## 2. Availability of right to self-defense

■ Similarly, with the exception of the rule of evidence which gives a person accused of a crime the benefit of a reasonable doubt, the law of self-defense is the same in both civil and criminal cases. *Forbes,* 9 S.W.3d at 900; *Foster v. H.E. Butt Grocery Co.,* 548 S.W.2d 769, 771 (Tex.Civ.App.-San Antonio 1977, writ ref'd n.r.e.). Under Section 9.31 of the Penal Code, a person is justified in using force against another when and to the degree such person reasonably believes the force is immediately necessary to protect himself or herself against the other's use or attempted use of unlawful force. TEX. PEN. CODE ANN. § 9.31(a) (Vernon 2003). The required elements for self-defense involving the use of deadly force are set out in Section 9.32 of the Penal Code: (1) the person would have been justified in using force against the other under Section 9.31; (2) a reasonable person in the same situation would not have retreated; and (3) the person reasonably believed that deadly force was immediately necessary to protect himself or herself against the other's use or attempted use of unlawful deadly force. TEX. PEN.CODE ANN. § 9.32 (Vernon 2003). "Reasonable belief" is defined as a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant. TEX. PEN.CODE ANN. § 1.07(a)(42) (Vernon Supp.2004–2005); *Williams v. State,* 35 S.W.3d 783, 785 (Tex. App.-Beaumont 2001, pet. ref'd).

The Penal Code also provides, however, that the use of force is not justified under certain circumstances. One instance when force is not justified, and the one exception pertinent to this case, is when the defendant seeks an explanation from or discussion with the other person concerning the defendant's differences with the other person while the defendant is carrying a weapon in violation of Section 46.02 of the Penal Code. *See* TEX. PEN.CODE ANN. § 9.31(b)(5)(A) (Vernon 2003); *Williams,* 35 S.W.3d at 785. Section 46.02 provides, in relevant part, that it is an offense for a person to intentionally, knowingly, or recklessly carry a handgun on or about his or her person. TEX. PEN.CODE ANN. § 46.02 (Vernon 2003).

## 3. Proper submission of jury instructions

■ In order for an instruction to be properly submitted to the jury, it must meet three requirements: 1) it must assist the jury, 2) it must accurately state the law, and 3) it must find support in the pleadings and evidence. *Tex. Workers' Comp. Ins. Fund v. Mandlbauer,* 34 S.W.3d 909, 912 (Tex.2000). More specifically, a charge limiting a defendant's right to self-defense pursuant to Section 9.31(b)(5)(A) is properly given when: (1) self-defense is an issue; (2) there are facts in evidence which show that the defendant sought an explanation from or discussion with the victim concerning their differences; and (3) the defendant was unlawfully carrying a weapon. *Bumguardner v. State,* 963 S.W.2d 171, 175 (Tex.App.-Waco 1998, pet. ref'd). If there is any evidence raising this issue, an instruction should be submitted. *Id.*

## C. Propriety of Jury Instruction under Section 9.31(b)(5)(A)

Rogers does not contend the instruction did not assist the jury, and he concedes

the instruction correctly stated the law. He conceded at trial that self-defense is the only issue. He specifically challenges submission of the instruction in terms of the evidence to support the instruction. Therefore, this Court must determine whether the evidence at trial supported the trial court's submission of the issue to the jury.[3]

### 1. Instruction: seeking a discussion of differences while unlawfully armed

Clearly, the applicability of the limitation on self-defense contained in Section 9.31(b)(5)(A) requires proof of: 1) seeking an explanation or discussion with one with whom the defendant has differences, and 2) carrying a weapon in violation of Section 46.02 of the Penal Code.

Consistent with Section 9.31(b)(5)(A), the trial court charged the jury on the limitation of self-defense:

> While a Defendant has the right to seek an explanation from or discussion with another concerning a difference with the other person, the use of force against the other is not justified if the Defendant sought an explanation from or discussion with the other person concerning a difference with the other person while the Defendant was unlawfully carrying a handgun.
>
> . . . .
>
> Now, therefore, if you find and believe from a preponderance of the evidence that the force used by Defendant against Tommy Peeler was a time when the

Defendant was seeking an explanation or a discussion with Tommy Peeler concerning their differences, but at that time the Defendant was unlawfully carrying a weapon, to-wit: a handgun, you will find against the Defendant's claim of self defense. . . .

We will address in turn the two proof requirements for a limiting instruction under Section 9.31(b)(5)(A).

### 2. Rogers' differences with Peeler

#### a. Rogers' approach on November 9

■ As presented, Rogers' contention calls on this Court to decide whether, by approaching Peeler under these circumstances, Rogers was seeking "an explanation from or discussion with [Peeler] concerning [Rogers'] differences with [Peeler] while [Rogers] was . . . carrying a weapon" in violation of Section 46.02.

"I just wanted to go explain to Mr. Peeler what the situation was." Rogers approached Peeler to discuss the group's presence on Peeler's land because he did not want Peeler to think he was intentionally on Peeler's property. He concedes his presence on Peeler's land would create a difference between the two men if he did not explain the situation.

#### b. Other instances qualifying as discussion for purposes of Section 9.31(b)(5)(A)

In *Bumguardner*, 963 S.W.2d 171, Bumguardner pulled into a convenience store

---

3. In his brief, Peeler initially responded to Rogers' first point of error with an argument that Rogers waived that contention by failing to provide a complete record on appeal. However, on June 17, 2004, the parties agreed to supplement the reporter's record to include transcripts of the deposition testimony referred to at trial. The parties agreed that the "transcripts are accurate, and contain all portions of the testimony presented to the jury through the videotaped depositions of these

witnesses." Plaintiff's Exhibit 10, showing the scene of the shooting and the surrounding land, and Defendant's Exhibit 2, a forty-two-minute video of a prior confrontation between Rogers and Peeler, were retained in the Gregg County District Clerk's office, but were requested and received by this Court. The parties' agreed supplementation appears to indicate Peeler has abandoned the argument regarding the incomplete record.

parking lot to confront his estranged wife and her new lover. The two men yelled and cursed at one another and began to spar before a store clerk broke up the fight. *Id.* at 173. Later that night, Bumguardner sought out his wife and the other man, leading to a confrontation ending in the fatal shooting of the boyfriend. *Id.* The Waco Court of Appeals held that the confrontation earlier that day (plus the fact the victim was romantically involved with Bumguardner's wife) was evidence that the two men had differences and that Bumguardner had gone that night to discuss those differences. *Id.* at 175. A Section 9.31(b)(5)(A) instruction limiting Bumguardner's right to self-defense was properly included. *Id.* at 176.

In *Williams*, 35 S.W.3d 783, Williams became angry after discovering that victim Joseph had spanked Williams' stepson, and Williams told Joseph he "wanted to talk to him." *Id.* at 785–86. After Williams followed Joseph to his residence, the two men fought. *Id.* at 786. Ultimately, Williams shot Joseph, once in the chest and once in the back. *Id.* Appealing his murder conviction, Williams complained of the trial court's refusal to include a self-defense instruction. *Id.* at 787. The appellate court concluded that the evidence established the elements of Section 9.31(b)(5) as a matter of law and that, therefore, no self-defense instruction was necessary. *Id.*

### c. *Rogers approached Peeler to discuss their differences*

Here, the six-year time frame in which Rogers and Peeler had no contact is relevant. From the passage of six years without incident, it would appear the hotly contested boundary dispute had come to some sort of passive resolution. However, by stating he approached Peeler in order to explain to Peeler why he and his friends were on Peeler's land, Rogers acknowledged the existence and gravity of the boundary dispute. He knew that his presence on Peeler's land would be a problem. The evidence of the men's previous disputes and Rogers' testimony as to why he approached Peeler the afternoon of the shooting are sufficient to satisfy this requirement for submitting this issue to the jury.

### 3. Unlawfully carrying a weapon

A person commits an offense if he or she intentionally, knowingly, or recklessly carries on or about his or her person a handgun. TEX. PEN.CODE ANN. § 46.02. Rogers admits he was not licensed to carry a firearm. He testified the group brought along firearms to shoot any snakes or wild hogs they may have encountered on their outing.

Rogers relies on Section 46.15 of the Penal Code providing, in relevant part, that Section 46.02 does not apply to a person who "is engaging in lawful hunting, fishing, or other sporting activity on the immediate premises where the activity is conducted, or is en route between the premises and the actor's residence, if the weapon is a type commonly used in the activity." TEX. PEN.CODE ANN. § 46.15(b)(4) (Vernon Supp.2004–2005).

The evidence does not support the argument that Rogers and his friends had gone hunting, however.[4] The evidence showed that the group was out four-wheeling and that Rogers and Giles brought along fire-

---

4. Nonetheless, the trial court included this issue in the jury charge:

   It is not a violation of the law for a person to carry a handgun if the person is engaged in lawful hunting, fishing, or other sporting activity on the immediate premises where the activity is conducted, or is directly en route between the premises and the person's residence, if the weapon is a type commonly used in the activity.

arms to shoot any snakes or wild hogs that might threaten them. These are not circumstances invoking the exception of Section 46.15(b)(4). In fact, Rogers' testimony under his own counsel's questioning suggested he was not a hunter at all:

[Counsel]: And you're not an avid deer hunter or squirrel hunter, are you?

[Rogers]: No.

[Counsel]: Hog hunter?

[Rogers]: No.

[Counsel]: Although you knew that all those animals were down in the river bottom, it's just not something that you engage in?

[Rogers]: No.

[Counsel]: But you have friends that come up to your property that you let them do that?

[Rogers]: That's the way I get my deer meat and stuff, yes.

[Counsel]: .... You like to eat it; you just don't like to shoot it.

[Rogers]: Yes.

Even if Rogers had claimed to have been hunting, there is no evidence, as required by Section 46.15(b)(4), that his pistol was a weapon commonly used in hunting snakes or wild hogs.

Section 46.15 further provides, in relevant part, that Section 46.02 does not apply to a person who is on his or her own premises. TEX. PEN.CODE ANN. § 46.15(b)(2) (Vernon Supp.2004–2005). Rogers was, therefore, authorized to carry his handgun on his own premises. Carrying the weapon became illegal, however, as soon as he ventured onto Peeler's property. Rogers' possession of the firearm may not have been unlawful before the point at which he realized he was on Peeler's property. However, by his own admission, he traveled at least fifty yards [5] toward Peel-

er after realizing he was on Peeler's land. Rogers unlawfully carried a weapon when he proceeded for these fifty yards toward Peeler for a discussion. The record contains sufficient evidence that Rogers carried a weapon in violation of Section 46.02 to warrant submission of an instruction on the self-defense limitation. Rogers' contentions to the contrary are overruled.

## III. ADMISSION OF PRIOR INSTANCES OF SELF–DEFENSE

■ Rogers' second point of error requires this Court to plunge into an area of the law some courts have referred to as "the murky waters of extraneous offenses." *Boutwell v. State,* 719 S.W.2d 164, 186 (Tex.Crim.App.1985) (op. on reh'g) (Teague, J., concurring); *Morrow v. State,* 735 S.W.2d 907, 908 (Tex.App.-Houston [14th Dist.] 1987, pet. ref'd). Rogers contends the trial court erroneously admitted evidence of two prior violent acts. In a 1988 incident, Rogers recklessly discharged a firearm while in an argument with a friend. Although Rogers claimed in this trial he was defending himself in that incident, he nonetheless pled guilty to a charge of reckless conduct. In a 1989 incident, Rogers claimed self-defense when he shot his then-wife in the leg because she allegedly came at him with a butcher knife. No civil or criminal action resulted from this incident. The only evidence of these two incidents is Rogers' own testimony.

After a pretrial hearing on the matter, the trial court issued a letter ruling on the issue of admissibility, concluding that "specific prior acts of the Defendant as they relate to the Defendant's claim of self defenses [sic] are also admissible," going to Rogers' intent, state of mind, or motive. The court confirmed and clarified its ruling

---

**5.** Peeler described this distance as approximately 150 yards.

and granted Rogers a running objection to admission of evidence of the past violent acts.

## A. Standard of Review

■ The admission or exclusion of evidence is a matter within the sound discretion of the trial court. Thus, we review this issue under an abuse of discretion standard. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *See State Bar of Tex. v. Evans,* 774 S.W.2d 656, 658 n. 5 (Tex.1989). The court should not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* Tex.R.App. P. 44.1; *see also Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989).

## B. Applicable Rules of Evidence

■ Evidence of extraneous offenses or acts is not admissible to prove action in conformity therewith on a particular occasion. Tex.R. Evid. 404(a). Evidence of other crimes, wrongs, or acts may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex.R. Evid. 404(b). Specifically, when an accused claims self-defense, the opposing party, in order to show the accused's intent, may introduce rebuttal evidence of prior violent acts by the accused in order to show his or her intent. *Halliburton v. State,* 528 S.W.2d 216, 218–19 (Tex.Crim. App.1975); *Johnson v. State,* 963 S.W.2d 140, 144 (Tex.App.-Texarkana 1998, pet. ref'd); *Armstrong v. State,* 850 S.W.2d 230, 236 (Tex.App.-Texarkana 1993), *aff'd,* 897 S.W.2d 361 (Tex.Crim.App.1995). Evidence of prior violent acts also may be admissible to refute a defensive theory. *See Halliburton,* 528 S.W.2d at 218; *Albrecht v. State,* 486 S.W.2d 97, 101 (Tex. Crim.App.1972); *Morrow,* 735 S.W.2d at 909.

Rogers argues that, in order for the past acts to be admissible, Peeler had to present some evidence Rogers was the aggressor in the previous incidents. He also relies on Rule 403, arguing that, even if evidence concerning the 1988 and 1989 incidents was relevant, its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Tex.R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *See Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App.1990) (op. on reh'g); *Robinson v. State,* 844 S.W.2d 925, 928 (Tex. App.-Houston [1st Dist.] 1992, no pet.).

## C. *Lolmaugh* and *Halliburton:* The General Rule

Charged with the murder of his wife's lover, the defendant in *Lolmaugh v. State,* 514 S.W.2d 758 (Tex.Crim.App.1974), urged self-defense as a justification for the shooting. The state introduced a portion of the defendant's written confession in which he admitted shooting another of his wife's lovers. *Id.* at 759. The Texas Court of Criminal Appeals held that the defendant, by making self-defense an issue, also made motive an issue in the case. *Id.* Evidence the defendant shot another of his wife's lovers tended to prove his motive in the primary case because it tended "to show his state of mind toward a class, lovers of his wife, and this state of mind or motive was such that he would shoot members of that class." *Id.* This evidence rebutted the theory of self-defense because it tended to show the defendant killed the

victim for being his wife's lover rather than in self-defense. *Id.*

In *Halliburton,* the appellant had been convicted of murdering her common-law husband even though she testified that she had acted in self-defense and that she had no intent to kill. *Halliburton,* 528 S.W.2d at 217. At issue on appeal in *Halliburton* was the admissibility of the testimony of a man who testified that, approximately five weeks after Halliburton shot her husband, she approached him for money he owed her. *Id.* When he told her he had no money, she shot him in the side as he ran from her. *Id.* The Texas Court of Criminal Appeals held that, to show her intent and to refute her theory of self-defense, the state was authorized to show she shot another man approximately five weeks after the murder for which she was on trial. *Id.* at 218. The *Halliburton* court noted that the facts in *Lolmaugh* represented a stronger case in favor of the admission of the extraneous offense since the evidence of the prior murder demonstrated not only state of mind, but also Lolmaugh's motive for shooting persons belonging to that particular class of people. *Id.* Nevertheless, the Texas Court of Criminal Appeals concluded that the evidence in *Halliburton* was also admissible. *Id.*

## D. Evidence was Admissible under Rule 404(b) and under *Lolmaugh* and *Halliburton*

### 1. Relevance to a material issue other than character

■■■■ The extraneous violent act must be relevant to a material issue in the case other than the appellant's character. *See Morrow,* 735 S.W.2d at 909. Among such material issues is the question of the appellant's intent, motive, or state of mind:

> Extraneous offense evidence that logically serves any of these purposes is "relevant" *beyond* its tendency "to prove

the character of a person to show that he acted in conformity therewith." It is therefore admissible, subject only to the trial court's discretion nevertheless to exclude it "if its probative value is substantially outweighed by the danger of unfair prejudice. . . ."

*Montgomery,* 810 S.W.2d at 387.

■■■■ When an appellant makes an issue of self-defense, motive becomes an issue. *Lolmaugh,* 514 S.W.2d at 759; *Morrow,* 735 S.W.2d at 910. Like the appellant in *Morrow,* Rogers contends that he was justified in shooting Peeler and that his motive or intent in doing so was to protect himself from Peeler's use of deadly force. *See Morrow,* 735 S.W.2d at 910. The testimony at issue was relevant in showing Rogers' state of mind at the time of the shooting. It also had relevance apart from its tendency to prove character, i.e., to rebut Rogers' theory of self-defense pursuant to Rule 404(b). It is clear Rogers raised the issue of self-defense. Because Rogers raised self-defense, his justification in shooting Peeler became a material issue in the case. Therefore, evidence of Rogers' past violent acts was available to refute his theory.

Further, and unlike the situation in *Morrow* and other similar cases, the prior incidents were relevant as showing the philosophy to which Rogers admittedly subscribed that, in a fight, he preferred to shoot someone before taking a blow. The practice of such a philosophy is certainly relevant to the issue of self-defense. Rogers denied still holding onto such a belief at the time he shot Peeler, but testified he did subscribe to such a fighting strategy as late as one year before this incident.

### 2. Rogers' reading of *Robinson*

■■■■ Citing to *Lolmaugh* and *Halliburton,* the First Court of Appeals presented the rule as follows: "When the

accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts *where the defendant was an aggressor.*" *Robinson,* 844 S.W.2d at 929 (emphasis added). The *Robinson* court cites to *Halliburton* and *Lolmaugh* for this proposition, although neither opinion explicitly uses the distinction "where the *defendant* was an aggressor." Rogers relies on his reading of *Robinson* to support his contention Peeler had to show that Rogers was *the aggressor* in the past violent acts in order for the evidence to be admissible.

We read *Robinson* as consistent with *Lolmaugh* and *Halliburton,* however, and find the result in the instant case reconcilable with such a reading of *Robinson* in that the evidence does, in fact, show that Rogers *was* an aggressor. In the earlier incidents, whether or not Rogers was justified in shooting, it is apparent through his own admission he shot the other persons and, thus, committed acts of aggression. In this context, *Robinson* does not refer to evidence that a defendant was the *first* aggressor.[6] Such a reading is consistent with the rule as stated in *Lolmaugh* and *Halliburton.*

Rogers also points to our unpublished decision in *Carter v. State,* 2004 WL 726252, No. 06–02–00174–CR, 2004 Tex. App. LEXIS 3073 (Tex.App.-Texarkana Apr.6, 2004, pet. ref'd) (not designated for publication), and argues that, based on the reasoning in *Carter,* the evidence of his past acts was inadmissible. We disagree. In *Carter,* we held that evidence of one of the two extraneous offenses admitted at trial was inadmissible. Carter, charged with aggravated assault, raised self-de-

fense as an issue. *Id.* 2004 WL 726252 at *5, 2004 Tex.App. LEXIS 3073 at *13. To rebut the theory of self-defense, the state introduced evidence of a prior conviction for assault and another for reckless injury to an elderly individual. *See* Tex. Pen. Code Ann. § 22.01 (Vernon Supp.2004–2005), § 22.04(a) (Vernon 2003). No details of the offense of reckless injury to an elderly person were revealed in the trial court. *Carter,* 2004 WL 726252 at *6, 2004 Tex.App. LEXIS 3073 at *14. Since a person may commit an offense under Section 22.04(a) of the Penal Code by either act or omission, we held that evidence of this offense did not fall within the exception allowing evidence of prior violent acts to rebut a defensive theory. *Id.* Put another way, there was no evidence Carter performed an aggressive act in connection with the reckless injury to an elderly individual. *See id.*

### E. Evidence was not Inadmissible under Rule 403

■ Having determined that the rule in *Robinson* does not render the evidence inadmissible, we analyze the evidence under Rule 403 by determining whether the prejudicial effect associated with the evidence of past violent acts substantially outweighed its probative value. *See Plante v. State,* 692 S.W.2d 487, 491 (Tex.Crim.App. 1985); *Morrow,* 735 S.W.2d at 909.

#### 1. Evaluating probative value

##### a. Similarity of offenses

■ One important measure of probative value is the presence of similarity between the extraneous act and the

---

6. Later in the *Robinson* opinion, the First Court of Appeals explains that, in a reversal of the roles in the issue before us, a defendant may show extraneous violent acts by the victim when the defendant claims self-defense and the victim was the *first aggressor. Robin-* son, 844 S.W.2d at 929. We understand Rogers' argument to be related to this language. However, *Robinson's* discussion regarding "first aggressor" refers to what the defendant must claim in order to introduce evidence of extraneous violent acts by the victim.

charged offense. *Plante*, 692 S.W.2d at 493; *Morrow*, 735 S.W.2d at 909. Substantial, but not exact, similarity is necessary where, as here, an appellant's intent to commit the offense charged is a material issue. *Morrow*, 735 S.W.2d at 909–10. Specifically, we must determine the degree of similarity required to make the extraneous act more probative on the issue of intent so as to outweigh its prejudicial effect. *Id.*

In the 1988 and 1989 incidents, as in the instant confrontation, Rogers fired a handgun. He testified he is very proficient in firing a pistol. Although Rogers was not in a confrontation with a specific class of persons, in each incident, Rogers did find himself in a confrontation with a familiar person, a friend in the 1988 incident, his wife in the 1989 incident, and his neighbor in this incident. Most obviously, in all three incidents Rogers claimed to have acted in self-defense.

The locations of the shootings were varied. In the 1988 and 1989 incidents, Rogers was at his home. Here, it is undisputed Rogers was on Peeler's property when the shooting occurred. Also, in the 1988 incident, criminal charges were filed, as they were here. No criminal action resulted in connection with the 1989 shooting of his wife.[7] Rogers does not detail any reasons as to the events leading up to the 1989 shooting. The record reveals that the confrontation with his friend in 1988 stemmed from accusations Rogers was having an affair with the friend's wife.

### b. Temporal proximity

■ Another consideration when assessing the probative value of a past violent act is the passage of time between the extraneous act and the conduct at issue. *See Plante*, 692 S.W.2d at 495; *Morrow*, 735 S.W.2d at 911. Here, the shooting forming the basis of this suit occurred in November 2002, fourteen and thirteen years after the 1988 and 1989 incidents, respectively. Such a length of time separating the two extraneous shootings and the instant shooting weighs against the probative value of the evidence.

### c. Alternate proof

■ The prejudicial effect of evidence of a past act increases and its probative value decreases in two circumstances: 1) when a defendant offers very little evidence to raise self-defense, and 2) when the opposing party offers a great deal of evidence to refute the defensive theory. *Morrow*, 735 S.W.2d at 911. The probative value of evidence of past acts is generally highest when there is specific, controverting evidence presented to support a defensive theory. *See id.* at 911–12.

Here, Rogers presented evidence of prior confrontations between the two men, evidence of Peeler's temper as illustrated by evidence of confrontations with third parties, and the testimony of Rogers' companions who were at the scene of the shooting. Therefore, while Peeler offered physical evidence Rogers did not shoot Peeler at a close distance as Rogers claims, Rogers presented specific evidence designed to prove the facts necessary to support his claim of self-defense. On these facts, the probative value of the prior

---

7. Rogers contends that, because no charges were filed, and because his wife remained with him for another thirteen years, suggest he was justified in shooting her. We do not agree that these facts necessarily lead to that conclusion. The record does not show the reason no charges were filed, and it would

not be unusual for no charges to be filed in a domestic violence situation, even if such charges were justified. Further, because there could be many reasons why Rogers' wife remained with him for another thirteen years, we decline to speculate that this fact shows he was justified in shooting her.

incidents was enhanced by the considerable evidence presented in support of Rogers' assertion of self-defense.

### 2. Evaluating prejudicial effect

#### a. Limiting instruction

■ The trial court can limit the inherently prejudicial effect generally associated with admission of evidence of other crimes or violent acts by properly instructing the jury on the use of the evidence to its specific purpose. *Id.* In *Morrow,* the appellate court noted the trial court properly limited the jury's consideration of the evidence to its specific purpose. *Id.* Here, on the other hand, although the trial court referred to the limited purpose of the evidence in its letter ruling, the record does not show the trial court instructed the jury as to this purpose.

Rogers did not raise this issue on appeal. Therefore, we do not consider it as a ground for reversal. Rather, we consider the absence of the limiting instruction only as it relates to weighing the prejudicial effect of the evidence. Without a limiting instruction, the prejudicial effect of the evidence was greater than it would have been had the jury been properly instructed as to the evidence's limited purpose.

#### b. Jury argument

Another means of determining the prejudicial effect is to examine the jury argument. *See id.* In *Morrow,* the court points out the state did not over-emphasize the evidence of other offenses in its argument to the jury. *Id.* The state, instead, only briefly referred to the evidence and, while doing so, also reminded the jury of the specific purpose of the evidence. *Id.* In *Escort,* on the other hand, the state "exploited this evidence to its fullest." *Escort v. State,* 713 S.W.2d 733, 736 (Tex. App.-Corpus Christi 1986, no pet.). The prosecutor twice referred to the prior murder in his closing argument to the jury,

stating at one point "[w]e already know that she has already killed one ex-husband." *Id.*

Here, Peeler placed a moderate amount of emphasis on the prior instances in which Rogers fired a handgun. While counsel's jury argument focused primarily on the lack of credibility of Rogers' companions and the inconsistencies in their versions of events, he did mention the evidence pertaining to the past violent acts: "And even with Mr. Rogers' guidance from two prior experiences, knowing what self-defense is legally all about, two prior times when this has happened, they didn't have time to get all their story together." In a more subtle reference to the evidence, counsel also suggested Rogers was a man "looking for an excuse to shoot somebody," a man who "would rather shoot than fight." Finally, counsel made the statement that, "Maybe the third time is a charm." Although this evidence was not the focal point of closing argument, such statements, especially without placing the proper limitations on the jury's consideration of that evidence, exacerbated the prejudicial effect the evidence had in the case.

### 3. Prejudicial effect did not substantially outweigh probative value

The absence of an instruction to the jury to consider the evidence of the 1988 and 1989 incidents for a specific purpose, coupled with Peeler's references to the evidence in jury argument, create a noteworthy prejudicial effect. However, considering the similarity of the three shootings in the context of specific, controverting evidence presented in support of Rogers' assertion of self-defense, we conclude the prejudicial effect did not substantially outweigh the probative value of the evidence of Rogers' past violent acts. The trial court did not abuse its discretion by admitting evidence of the extraneous violent

acts which Rogers also claimed he committed in self-defense.

## IV. CONCLUSION

The record contains evidence Rogers approached Peeler, with knowledge of their prior history of a hostile boundary dispute, to discuss his presence on Peeler's land. There is also evidence he approached Peeler while unlawfully carrying a firearm. Therefore, the trial court properly instructed the jury on the limitation of a person's right to self-defense under those two circumstances. The trial court properly admitted evidence of prior violent incidents in which Rogers asserted he acted in self-defense. Such evidence was available to show Rogers' intent, state of mind, or motive, to refute Rogers' defensive theory. We, therefore, overrule Rogers' first two points of error.

Having found no reversible error in connection with Rogers' first two points of error, we also overrule his third point of error complaining of cumulative error. Accordingly, we affirm the trial court's judgment.