**William OLIVAREZ, Jr., Appellant,**

**v.**

**Jane DOE,[1] Appellee.**

**No. 12–02–00359–CV.**

Court of Appeals of Texas,
Tyler.

Dec. 8, 2004.

---

1. The appellee was identified as "Jane Doe" in the trial court.

Sten M. Langsjoen, Tyler, for appellant.

Robert A. Ray, Tyler, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION

DIANE DeVASTO, Justice.

In this case involving allegations of sexual misconduct, William Olivarez, Jr. appeals a judgment entered after a jury verdict awarding Jane Doe compensatory damages and exemplary damages. In thirteen issues, Olivarez challenges the le-

gal sufficiency of the evidence and contends that the trial court erred by admitting evidence of extraneous misconduct and denying his motion for new trial. We affirm.

## BACKGROUND

Jane Doe sued William Olivarez, Jr., a relative, for damages resulting from various alleged acts of sexual misconduct. She alleged that the acts occurred over a period of approximately four years between June of 1990 and late 1994.

Jane was twenty-one years old at the time of trial. She testified that when she was about eight or nine years old, Olivarez began sexually abusing her. She stated that (1) on a trip in Olivarez's purple/maroon car for ice cream, Olivarez forced Jane's hand onto his penis; (2) on another trip to play tennis, he forced her hand to massage him and her hand became "really sticky"; and (3) during another incident, Olivarez pushed her over a dresser on the second floor of her grandparents' home resulting in her "feeling hurt" in her rectal area. Jane's written statement to law enforcement, dated March 21, 2000, was also admitted into evidence. In her statement, Jane described Olivarez's conduct on the ice cream trip as well as other acts of sexual misconduct Olivarez committed with her during the time period in question. Jane testified that Olivarez showed her parts of the Bible to prove that what they were doing was "all right." He told her that if she ever told anyone what was happening, she would be taken away from her parents and put in a foster home.

Jane testified that Olivarez lived in South Texas when the abuse began, but the incidents occurred when Olivarez was visiting his parents who lived near Jane and her family. In 1995, Olivarez and his wife moved in with Olivarez's parents, and Olivarez subsequently became the youth minister at the church Jane and her family attended. While serving as youth minister, Olivarez met several young boys at the church, including J.K., C.B., and B.H. Over Olivarez's objection, all three boys testified about several instances of inappropriate conduct by Olivarez in 1995 and 1996. Jane's aunt and grandmother testified about an incident when they found Olivarez in a dark bedroom with the door closed. Each testified that Olivarez was in his underwear beside the bed and B.H. was in the bed under the covers. Olivarez testified, stating unequivocally that he had never committed any acts of sexual misconduct with Jane, C.B., or B.H.

At the conclusion of the evidence, the trial court charged the jury on assault, indecency with a child, aggravated sexual assault, and damages. The jury awarded Jane $200,000.00 as compensatory damages and $10,000.00 as exemplary damages.[2] This appeal followed.

## ISSUES PRESENTED

Olivarez presents thirteen issues on appeal. In eight of those issues, Olivarez complains of certain evidence of extraneous misconduct admitted over his objection at trial. In four of the issues, he asserts that the trial court should have granted his motion for new trial in which he again complained of the admitted evidence. Finally, in one of the issues, he argues that, absent the extraneous misconduct evidence, the evidence is legally insufficient to sustain the verdict. We first address the issues challenging the trial court's evidentiary ruling.

---

**2.** John Doe, individually and as next friend of John Doe I, a minor, was also a plaintiff in Jane's suit. In a separate trial two months earlier, a jury found that Olivarez attempted indecency with a child, John Doe I, but awarded no money damages.

### EVIDENCE OF EXTRANEOUS MISCONDUCT

Evidence of a person's character or character trait is not admissible to prove action in conformity therewith on a particular occasion. TEX.R. EVID. 404(a). Evidence of other crimes, wrongs, or acts may be admissible when it is relevant to a noncharacter-conformity fact of consequence, such as intent. TEX.R. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1990) (op. on reh'g); *Porter v. Nemir*, 900 S.W.2d 376, 381 (Tex.App.-Austin 1995, no writ). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. CIV. EVID. 401. Even relevant evidence may be excluded "if its probative value is *substantially* outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403 (emphasis added); *Montgomery*, 810 S.W.2d at 387. Evidence is unfairly prejudicial if it would tend to persuade a jury to determine an issue on an improper basis such as emotion or bias. *Tex. Capital Sec., Inc. v. Sandefer*, 58 S.W.3d 760, 779 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

### Standard of Review

The decision to admit or exclude evidence is a matter within the discretion of the trial court. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998). The trial court is given wide latitude to admit or exclude evidence of extraneous misconduct. *Montgomery*, 810 S.W.2d at 390. So long as the trial court operates within the boundaries of its discretion, an appellate court should not disturb its ruling, whatever it may be. *Id.*

The trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or acts without reference to any guiding principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).

Where a trial court abuses its discretion in admitting evidence of extraneous misconduct, the judgment may not be reversed absent a showing that the trial court's error probably caused the rendition of an improper judgment or that the error probably prevented the appellant from properly presenting the case to the court of appeals. *See* TEX.R.APP. P. 44.1; *Malone*, 972 S.W.2d at 43. An appellate court must review the entire record when making this determination. *Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220 (Tex.2001). Reversible error does not usually occur in connection with rulings or questions of evidence unless the appellant can demonstrate that the whole case turns on the particular evidence admitted or excluded. *Id.*

### EVIDENTIARY ISSUES

In issues one and three, Olivarez complains that the trial court erred in admitting the testimonies of C.B. and B.H., respectively, in which they described inappropriate conduct by Olivarez in 1995 and 1996. In issues five and seven, he complains that the trial court permitted Jane's aunt and grandmother, respectively, to testify about Olivarez's inappropriate conduct with B.H. In issue nine, Olivarez challenges the trial court's admission of a portion of Jane's written statement in which she made allegations that Olivarez had abused other children, including C.B. and B.H. In three additional issues raised in a supplemental brief, Olivarez asserts that the video depositions of William Summers, J.K., and Olivarez "did not supply the jury any substantive evi-

dence relative to [Jane's] allegations and emphasized inadmissible extraneous conduct on the part of [Olivarez]." Because these issues are intertwined, we address them together.

### Olivarez's Objection and the Trial Court's Ruling

Before the jury was brought in, the trial court conferred with counsel for both parties regarding the admissibility of the extraneous misconduct evidence (the "evidence"). Olivarez's counsel objected to the evidence. Jane's counsel responded that the information was relevant to intent and that Jane had also alleged and needed to prove plan and scheme.

Olivarez's counsel explained that "here we have the allegations of heterosexual sexual abuse and he is wanting to prove extraneous offenses of homosexual abuse. In order to have probative value, the evidence, the extraneous offenses, has to have a tendency to prove or disprove the main issue, which is the abuse of [Jane]." Counsel further argued that "[t]he switching over from the alleged heterosexual abuse to the alleged homosexual abuse is [sic], if anything, would tend to not prove the abuse...." Jane's counsel argued, and the trial court agreed, that these arguments related to weight only and not to admissibility of the evidence.

The court acknowledged Olivarez's defensive theory that the abuse never happened as opposed to something that happened but was not intentional. However, the court concluded that intent was an issue "since there are intentional claims here" and ruled that the evidence was admissible to show intent. The court granted Olivarez a "standing running objection to any evidence of extraneous acts, any allegations of sexual misconduct whether heterosexual or homosexual."

### The Evidence

Olivarez challenges the admission of the following evidence.

### Testimony of C.B. (Issue One)

C.B. testified that he spent the night at Olivarez's home after a church meeting. He awoke during the night to find Olivarez with his head below C.B.'s waist and rubbing C.B.'s penis. C.B. rolled away from Olivarez, telling him to leave him alone. Olivarez pulled C.B. back toward him and C.B. then stood by the bed. Olivarez tried to get him into the bed by telling C.B. he would give him a massage. C.B. refused to get into the bed, and Olivarez finally went back to his room.

C.B. also testified that he heard an exchange between Olivarez and B.H. at a football game after church. Olivarez tried to give B.H. a massage after B.H. told him that he did not want one. B.H. was "loud and mad" about what Olivarez said to him. B.H. then pushed Olivarez to the ground.

C.H. testified that on another occasion, he, B.H., and Olivarez were traveling in Olivarez's car, and B.H. was standing with his head out of the sunroof. C.B. saw Olivarez grab B.H. between the inside of his knee and his mid-thigh and begin rubbing up and down. B.H. told him to stop and pushed him away.

### Testimony of B.H. (Issue Three)

B.H. testified that he met Olivarez through church activities and spent the night at his house many times. When he spent the night, he and Olivarez always slept in the same room, and they often slept in the same bed. Olivarez's wife and young son slept in another room. B.H. stated that Olivarez would tickle him, wrestle with him, and then read the Bible. During one bout of wrestling, Olivarez's hand touched B.H.'s bottom, and B.H. responded, "Not like that." Another time, Olivarez massaged B.H.'s back after a

football game and rubbed B.H.'s stomach "a little low." B.H. once again told him to stop. On a church trip to Irving, Texas, Olivarez made it clear to B.H. that he wanted him to stay in his hotel room. B.H. refused to stay with Olivarez. B.H. testified that he did not recall Olivarez rubbing his leg while he was standing in the car. He also testified that Olivarez bought gifts for him such as clothes and shoes.

### Testimonies of Jane's aunt and grandmother (Issues Five and Seven)

Jane's aunt and grandmother gave similar accounts of an event that occurred at the home of Olivarez's father, Willy Olivarez. The two women testified that one morning about 12:30 or 1:00, they went by to see Willy's house. During the tour, they attempted to enter the guest room, but the door would not open. When Willy finally got the door open, the room was dark. Olivarez and B.H. were in the room. Olivarez was in his underwear, and B.H. was in the bed under the covers. Olivarez seemed startled and said, "Dad, don't turn on the light." He then told Willy that they needed to leave because he was "in the middle of counseling."

### Other evidence of extraneous misconduct (Issue Nine and Supplemental Issues One, Two, and Three)

Jane's written statement included several references to possible sexual misconduct by Olivarez with other children, including B.H. and C.B.

William Summers testified by video deposition that he had been the pastor of Jane's church where Olivarez was the youth minister. He confronted Olivarez about a complaint regarding Olivarez sleeping with one of the boys from the church. Olivarez did not deny the conduct and resigned.

J.K., testifying by video deposition, talked about his relationship with Olivarez and also about a night when he slept at the Olivarezes' home in the same bed as Olivarez. J.K. stated that he went to bed with his pants on. Olivarez told him he could not sleep with someone who had his pants on and that J.K. needed to take his pants off. According to J.K., Olivarez began tickling him and reaching over trying to take his pants off. J.K. "fought him off," and Olivarez stopped.

In Olivarez's video deposition, some of his testimony was similar to that of other witnesses. He admitted that he had slept in the same bed with J.K., B.H., and C.B. He admitted having physical contact with the boys, but described the contact as playful and nonsexual in nature.

### Issues One, Three, Five, Seven, and Nine

Before admitting the evidence, the trial court ruled, as required by the rules of evidence, that the evidence was both relevant to a material issue other than the defendant's character (intent) and was more probative than prejudicial. Olivarez does not complain of the trial court's ruling that the evidence was relevant to a material issue. Therefore, we do not review the propriety of the ruling.

Olivarez challenges the trial court's second conclusion: that the evidence was more probative than prejudicial. More particularly, Olivarez argues that the evidence lacks probative value because the extraneous misconduct is not sufficiently similar to the conduct Jane alleged. Consequently, his argument continues, the testimony from C.B., B.H., Jane's aunt, and Jane's grandmother, summarized above, and the portions of Jane's statement describing extraneous misconduct are more prejudicial than probative. Thus, he concludes, the admission of the evidence probably caused the rendition of an improper judgment.

### Analysis

 One important measure of probative value is the presence of similarity between the extraneous misconduct and the misconduct in question. *Rogers v. Peeler*, 146 S.W.3d 765, 775–76 (Tex.App.-Texarkana 2004, no pet.) (citing *Plante v. State*, 692 S.W.2d 487, 493 (Tex.1985)). Absent the requisite similarity, evidence of the extraneous misconduct is more prejudicial than probative. *See Rogers*, 146 S.W.3d at 776. In his brief, Olivarez assumes for purposes of argument that all of the allegations were true and identifies the following distinctions between the extraneous misconduct and the misconduct Jane alleged:

1. Jane Doe was a female; C.B. and B.H. were males.
2. Jane Doe was injured; C.B. and B.H. had no injuries.
3. Jane Doe was a relative; C.B. and B.H. were unrelated.
4. Jane Doe was threatened; C.B. and B.H. had no threats.
5. Jane Doe was abused first; C.B. and B.H. were abused later.

 When proving identity, exact certainty between the extraneous misconduct and the misconduct in question is not required. *Rogers*, 146 S.W.3d at 776. Moreover, the same high degree of similarity is not needed when intent is the disputed issue. *Plante*, 692 S.W.2d at 492–93. In examining the record before us, we note that (1) Olivarez was acquainted with Jane, C.B., and B.H. before the misconduct began; (2) as Jane's relative and C.B. and B.H.'s youth minister, Olivarez had a relationship of trust with each child; (3) because of the nature of the relationship, Olivarez could spend time with each child, unaccompanied by another adult, without arousing any suspicion of improper behavior; (4) the misconduct usually occurred during outings that were scheduled as a result of Olivarez's relationship with each child; and (5) all of the misconduct involved actual sexual contact or contact that could be construed as a sexual advance. In our view, after examining the record, the difference in gender, and the difference in the nature of the sexual acts, and the use or nonuse of fear as a deterrent to outcry does not lessen the overall similarity of the misconduct. Consequently, based on the facts presented here, we conclude that the extraneous misconduct and the misconduct Jane alleged are similar in nature. Therefore, the probative value of the evidence was high.

 In addressing the prejudicial nature of the evidence, Olivarez points out that "sexually related misconduct and misconduct involving children are inherently inflammatory." *See Montgomery*, 810 S.W.2d at 397. It does not follow, however, that such evidence is inherently more prejudicial than probative. In fact, Rule 403 favors the admission of relevant evidence and carries the presumption that relevant evidence will be more probative than prejudicial. *Rogers*, 146 S.W.3d at 773 (citing *Montgomery*, 810 S.W.2d at 389).

Here, C.B. described an incident in which Olivarez rubbed his penis. Both C.B. and B.H. testified about Olivarez giving them massages or offering to do so and sleeping in the same bed with them each time they stayed overnight at his house. J.K. testified that once when he spent the night with Olivarez, they slept in the same bed and Olivarez tried to pull off J.K.'s pants. Other testimony described one incident in which Olivarez touched B.H.'s "bottom" and rubbed B.H.'s stomach "a little low." C.B., B.H., and Olivarez testified about tickling and wrestling. Summers testified that Olivarez resigned after

being confronted about his conduct. Jane's written statement included allegations that Olivarez had abused other children, including C.B. and B.H., but did not contain details of any incidents. Although this evidence was somewhat prejudicial, the evidence would not have persuaded the jury to reach a verdict on an improper basis. Moreover, the trial court instructed the jury to consider the evidence for the sole purpose of determining Olivarez's intent toward Jane. This minimized the likelihood of any impermissible inference of character conformity. *See Lane v. State,* 933 S.W.2d 504, 520 (Tex.Crim.App.1996).

The record supports the trial court's conclusion that the evidence was more probative than prejudicial. Consequently, we hold that the trial court did not abuse its discretion in admitting the evidence. Accordingly, we overrule Olivarez's first, third, fifth, seventh, and ninth issues.

### Supplemental Issues

In three supplemental issues, Olivarez maintains that his video deposition testimony and that of J.K. and Summers "did not supply any substantive evidence relative to [Jane's] allegations and emphasized inadmissible extraneous conduct on the part of [Olivarez]." Therefore, he concludes, the trial court erred in admitting the testimony. We interpret this argument as a contention that the evidence was inadmissible because it lacked probative value. We have held to the contrary. Olivarez's first, second, and third supplemental issues are overruled.

### FAILURE TO GRANT MOTION FOR NEW TRIAL

In issues two, four, six, and eight, Olivarez asserts that the trial court erred in failing to grant his motion for new trial. Specifically, he states that "[f]ollowing the conclusion of the Trial, Appellant provided the Trial Court with the opportunity to correct the apparent singular and cumula-

tive harmful effect the extraneous conduct had on the jury's verdict." We have held that the trial court did not abuse its discretion in concluding that the evidence was more probative than prejudicial. Therefore, the trial court did not err in failing to grant Olivarez's motion for new trial complaining of the same ruling. Olivarez's second, fourth, sixth, and eighth issues are overruled.

### CONCLUSION

The trial court ruled that (1) the extraneous misconduct evidence was relevant to intent, which was a material issue and (2) the issue was more probative than prejudicial. Olivarez does not challenge the trial court's ruling that the evidence was relevant to a material issue. We have held that the trial court did not abuse its discretion in ruling that the evidence was more probative than prejudicial. Consequently, we have overruled Olivarez's issues one through nine and his three supplemental issues. In Olivarez's tenth issue, he contends that in the absence of the extraneous misconduct evidence, the jury's verdict is based on legally insufficient evidence. Because we have held that the trial court did not abuse its discretion in admitting the complained-of evidence, we need not address his legal sufficiency argument. The judgment of the trial court is *affirmed.*