**Vernon Joe JOHNSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–03–00153–CR.**

Court of Appeals of Texas, Waco.

Dec. 15, 2004.

Mark Russell Yanis, Houston, for appellant.

Charles A. Rosenthal Jr., Harris County Dist. Atty., Houston, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Vernon Joe Johnson of murder and assessed his punishment at sixty years' imprisonment. Johnson contends in two issues that (1) the court erred by denying his request for a self-defense instruction in the charge, and (2) he received ineffective assistance of counsel at trial. Because the evidence raises the issue of self-defense, we will reverse and remand.

After Johnson and his girlfriend Nikowana Turner separated, he moved out of her apartment. The next month, Turner began a relationship with the victim in this case, Kenneth Pope, who at some point moved into her apartment. Johnson later met Pope because of his continued contacts with Turner and their two sons. Johnson's and Pope's relationship soon deteriorated because of Johnson's disagreements with Turner about their two sons.

On the day of the fatal shooting, Johnson and Pope had several verbal altercations. Johnson and a friend testified that Pope displayed a handgun during one of these incidents. Johnson testified that he then got a handgun for protection. He later went to Turner's apartment to talk with Turner about his dispute with Pope. Johnson "just wanted to tell her to tell [Pope] to leave [him] alone." Johnson testified that he did not know that Turner and Pope were living together at that time.

When Johnson arrived at Turner's apartment complex, she was not in her apartment, so he walked around the area looking for her. He saw her getting into

her father's car, which he thought her father was driving at the time. Johnson approached the car to talk to her. Johnson testified that he then discovered that Pope was driving. Pope and he exchanged words, then, according to Johnson, Pope pointed a gun. Johnson started backing away slowly because he feared Pope would shoot him in the back. Pope opened the door, and Johnson started shooting at him. As Johnson described it, "I just snapped. I just kept shooting. I just kept shooting."

Turner disputed Johnson's testimony. According to Turner, Johnson had earlier threatened to kill Pope. She testified that Johnson ran up to the car and began shooting Pope at point-blank range without provocation. She denied that Pope had a gun, though she conceded on cross-examination that there were two handguns in the car. A friend of Turner's who witnessed the shooting testified to virtually the same facts as Turner.

■ Johnson contends in his first issue that the court erred by denying his request for a self-defense instruction in the charge. The State responds that Johnson was not entitled to the requested instruction because he went to discuss his differences with Pope while illegally carrying a handgun or, in the alternative, that any error in denying the instruction is harmless. Because Johnson presented sufficient evidence to raise self-defense and because the harmless-error contentions presented by the State all relate to the credibility of Johnson's defense, we will sustain Johnson's first issue.

■ "A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Ferrel v. State,* 55 S.W.3d

586, 591 (Tex.Crim.App.2001). The purpose of this rule is to ensure "that the jury, not the judge, will decide the relative credibility of the evidence." *Granger v. State,* 3 S.W.3d 36, 38 (Tex.Crim.App. 1999); *Prenger v. State,* 108 S.W.3d 501, 505 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). We review the evidence in the light most favorable to the defendant to determine whether a defensive issue should have been submitted. *See id.*

■ However, even if the evidence when viewed in this light raises a prima-facie defense, no error is shown in the denial of a defensive instruction if the evidence establishes as a matter of law that the defendant is not entitled to rely on this defense. *See Dyson v. State,* 672 S.W.2d 460, 463–65 (Tex.Crim.App.1984); *Williams v. State,* 35 S.W.3d 783, 786 (Tex. App.-Beaumont 2001, pet. ref'd). Accordingly, the defendant is not entitled to a self-defense instruction if the evidence establishes as a matter of law that one of the exceptions to self-defense listed in section 9.31(b) applies. *Id.; see also* TEX. PEN. CODE ANN. § 9.31(b) (Vernon 2003).

Thus, the court in *Dyson* found no error in the denial of a self-defense instruction because the defendant "expressly stated that his intent was to fight his brother" on the occasion in question, and thus, the evidence established as a matter of law that the defendant had provoked the confrontation. *See Dyson,* 672 S.W.2d at 463–65; *see also* TEX. PEN.CODE ANN. § 9.31(b)(4) (self-defense not justified if defendant provoked the difficulty). In the same manner, the court in *Williams* found no error in the denial of a self-defense instruction because the defendant intentionally sought out the victim to discuss their differences while unlawfully armed with a handgun. *See Williams,* 35 S.W.3d at 786–87; *see also* TEX. PEN.CODE ANN.

§ 9.31(b)(5) (self-defense not justified if defendant seeks out victim to discuss differences while unlawfully carrying a weapon).

■ It is for the Legislature to define defenses to crimes. *See Giesberg v. State,* 984 S.W.2d 245, 250 (Tex.Crim.App.1998); *Prince v. State,* 137 S.W.3d 886, 888 (Tex. App.-Houston [1st Dist.] 2004, no pet.). Accordingly, we construe the statutory defenses applicable to this case as written.

Section 9.31 of the Penal Code defines self-defense. As pertinent to Johnson's case, section 9.31 provides as follows:

(a) Except as provided in Subsection (b), a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

(b) The use of force against another is not justified:

. . .

(4) if the actor provoked the other's use or attempted use of unlawful force, unless:

(A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(B) the other nevertheless continues or attempts to use unlawful force against the actor; or

(5) if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was:

(A) carrying a weapon in violation of Section 46.02; or

(B) possessing or transporting a weapon in violation of Section 46.05;

. . . .

TEX. PEN.CODE ANN. § 9.31 (Vernon 2003).[1]

Viewed in the light most favorable to Johnson, the evidence is that Pope had previously threatened Johnson with a gun, that Johnson sought out Turner to seek her help in resolving his differences with Pope, that Pope displayed a handgun when Johnson approached the car to talk with Turner, and that Johnson shot Pope because he thought Pope was about to shoot him.

The State argues that the facts of Johnson's case are like those in *Williams* and that the trial court properly denied a self-defense instruction because Johnson was seeking to resolve his differences with Pope and was admittedly unlawfully carrying a handgun. However, Johnson's case is different from *Williams* because Johnson sought out Turner, not Pope. *Cf. Williams,* 35 S.W.3d at 786.

Section 9.31(b)(5) limits the right of self-defense when the defendant seeks out "the other person" (*i.e.,* the victim) to discuss their differences. TEX. PEN.CODE ANN. § 9.31(b)(5). We must apply this statute as written. *See Bluitt v. State,* 137 S.W.3d 51, 54 (Tex.Crim.App.2004); *see also Giesberg,* 984 S.W.2d at 250; *Prince,* 137 S.W.3d at 888. Because Johnson testified that he sought out Turner instead of Pope, the evidence does not establish as a matter of law that the limitation of section 9.31(b)(5) applies. *Cf. Smith v. State,* 66 Tex.Crim. 593, 148 S.W. 722, 726–27 (1912) (defendant entitled to self-defense instruc-

1. Section 9.32, which defines when a person is justified in using deadly force to defend himself, is also pertinent to Johnson's case. *See* TEX. PEN.CODE ANN. § 9.32 (Vernon 2003).

However, the parties do not dispute that, if Johnson is entitled to a self-defense instruction, he is also entitled to an instruction on the right to use deadly force in self-defense.

tion when he went to discuss his differences with one person and was attacked by another person whom he fatally shot). To the extent that other evidence tends to controvert Johnson's version of the events, a question is presented for the jury to resolve on this issue. *See Ferrel,* 55 S.W.3d at 591; *Granger,* 3 S.W.3d at 38; *Prenger,* 108 S.W.3d at 505; *Williams,* 35 S.W.3d at 786.

■ Because the evidence viewed in the light most favorable to Johnson raises the issue of self-defense, the court erred by denying Johnson's request for an instruction on this defensive issue. We now determine whether this error requires reversal.

■ The court denied Johnson's request for a self-defense instruction. Accordingly, reversal is required if he suffered "some harm" as a result of the denial. *Ovalle v. State,* 13 S.W.3d 774, 786 (Tex.Crim.App. 2000) (quoting *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985)). "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

The State contends that Johnson suffered no harm from the denial of a self-defense instruction because he provoked the confrontation with Pope. Although we agree that there is evidence in the record to support the submission of an instruction on the issue of provocation, the evidence does not establish as a matter of law that Johnson provoked the confrontation. *Cf. Dyson,* 672 S.W.2d at 463–65; *Williams,* 35 S.W.3d at 786–87.

The issue of who provoked the encounter which resulted in Pope's death was vigorously contested. Defense counsel il-

luminated numerous discrepancies in the testimony of the State's witnesses pertinent to Johnson's self-defense claim. Although the State highlights the evidence which contradicts Johnson's self-defense claim, this evidence at best makes the issue a question for a jury to decide. *See Ferrel,* 55 S.W.3d at 591; *Granger,* 3 S.W.3d at 38; *Prenger,* 108 S.W.3d at 505; *Williams,* 35 S.W.3d at 786.

Because the trial court denied Johnson's request for an instruction on self-defense, counsel was not able to present this defensive theory to the jury for its consideration.

Accordingly, we hold that Johnson suffered "some harm" from the court's denial of an instruction on the issue of self-defense. Thus, we sustain his first issue.

Because we have sustained Johnson's first issue, we need not address his second issue.

We reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.