

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00139-CR

**BRAVERN WINSTON,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 66th District Court
### Hill County, Texas
### Trial Court No. 37,811

## MEMORANDUM OPINION

Appellant Bravern Winston was indicted on the felony offense of burglary of a habitation. The indictment further charged Winston as a habitual offender, alleging four prior felony convictions of Winston as enhancements. *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). A jury found him guilty and assessed a life sentence. Winston appeals, asserting three issues. We will affirm.

Winston's first issue asserts that the trial court erred by admitting copies of the judgments of his prior convictions (five felony judgments and three misdemeanor

judgments) after he had admitted to those convictions during his testimony in guilt-innocence. The trial court overruled Winston's relevance and "improper impeachment" objections to all of the felony judgments and to one of the misdemeanor judgments and overruled his relevance, hearsay, and Rules 403 and 404(b) objections to the other two misdemeanor judgments.

On appeal, Winston asserts that the trial court erred because admission of the judgments was improper impeachment. But as to the last three misdemeanor judgments, Winston did not object at trial on that ground. Winston's complaint as to the last three misdemeanor judgments is not preserved for appellate review because the complaint made on appeal must comport with an objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

The only authority on point that Winston cites is *Johnson v. State*, No. 01-02-00861-CR, 2003 WL 21666109 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (mem. op., not designated for publication), where the court cited no controlling authority in holding "that the trial court erred by admitting the judgment and sentence into evidence after appellant admitted his prior conviction." *Id.*, 2003 WL 21666109, at *3-4. The court then addressed harm and found the error harmless. *Id.* We assume without deciding that the admission of the judgments was error and will likewise proceed to a harm analysis.

Error in the admission of impeachment evidence is non-constitutional error, which we disregard if the error did not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Alemon v. State*, 795 S.W.2d 332, 334 (Tex. App.—Amarillo 1990, no pet.). A

substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). In assessing the likelihood that a jury's decision was adversely affected by the error, we consider the entire record, including any testimony or physical evidence admitted, nature of the evidence supporting the verdict, character of the alleged error, and how it might have been considered in connection with other evidence. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider jury instructions, the State's theory, any defensive theories, closing argument, voir dire, and whether the State emphasized the error. *Id.* at 355-56.

The victim testified that she had locked Winston out of her house and he then kicked in the door, came inside the house, ransacked it, and stole her purse. Corroborating the victim's testimony was evidence showing that the victim's door had obviously been kicked in, as the door frame and the door were damaged. There was a shoe print on the door that matched the bottom of the shoe that Winston was wearing when he arrested, the couch cushions were in disarray, and Winston was standing outside with the victim's purse when police arrived. Winston gave a different version, testifying that he was outside with the victim and that when she went back in, she took his money. Winston said that he told the victim to give his money back and that when

he called 9-1-1, she left out the back and said she was going to call the police. He said that he took her purse in an attempt to keep the victim from leaving with his money.

During closing argument, the prosecutor asked the jurors not to convict Winston on his prior criminal record, but on the evidence. In finding Winston guilty, the jury obviously believed the victim and disbelieved Winston's version. We agree with the State that it is unlikely that the admission of the judgments of conviction in addition to Winston's testimonial admissions of his convictions had a substantial effect on the jury in determining guilt. We therefore conclude that Winston was not harmed by the error, if any. Issue one is overruled.

In issue two, Winston asserts that the trial court erred by instructing the jury in the punishment charge to find as "true" the enhancement allegations of three of Winston's prior felony convictions because he had "judicially confessed" to them when he testified in the guilt-innocence phase.[1] Winston had pleaded "not true" to the enhancement allegations, and the trial court overruled his objection to the charge's instruction. The State correctly concedes that the trial court's instruction was erroneous because Winston had pleaded "not true." *See Washington v. State,* 677 S.W.2d 524, 529 (Tex. Crim. App. 1984), *overruled on other ground by Bell v. State,* 994 S.W.2d 173, 175 (Tex. Crim. App. 1999).

We thus proceed to a harm analysis for charge error that was objected to and address whether Winston suffered "some harm" as a result of the trial court's error.

---

[1] The three prior felony convictions were a 1989 conviction for burglary of a habitation, a 1989 conviction for escape, and a 1997 conviction for injury to a child.

*Johnson v. State,* 157 S.W.3d 48, 52 (Tex. App.—Waco 2004, no pet.) (citing *Ovalle v. State,* 13 S.W.3d 774, 786 (Tex. Crim. App. 2000) (quoting *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

We must find that the defendant "'suffered some actual, rather than merely theoretical, harm from the error.'" *Reeves v. State,* 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quoting *Warner v. State,* 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)). " 'If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be some harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.' " *Id.* (quoting *Almanza,* 686 S.W.2d at 171).

As noted above in the first issue, Winston admitted to the three prior felony convictions at issue in his testimony in the guilt-innocence phase, and the authenticated pen packets and judgments of conviction were admitted into evidence. In the punishment phase, the State reoffered them. The prior felony convictions are properly sequenced for the application of the habitual offender enhanced punishment.[2] Officer

---

[2] Section 12.42(d) provides in part:

> (d) Except as provided by Subsection (c)(2) or (c)(4), if it is shown on the trial of a
> felony offense other than a state jail felony punishable under Section 12.35(a) that the

Girsh, who was one of the arresting officers and who had dealings with Winston both before and after the burglary, identified Winston in the photographs in the pen packets.

Winston was charged with burglary of a habitation with intent to commit theft, a second-degree felony with a punishment range of two to twenty years. TEX. PENAL CODE ANN. §§ 12.33(a), 30.02(a), (c)(2) (West 2011). With proof of two or more prior and final felony convictions, the punishment range is enhanced to 25 to 99 years or life. TEX. PENAL CODE ANN. § 12.42(d). The jury did not assess a sentence on the lower end of the punishment range; it assessed a life sentence, thus likely showing that a lesser punishment for Winston was not a consideration.

Winston did not dispute or contradict the evidence of the three prior felony convictions. From Winston's testimonial admissions, Girsh's identification of Winston in the pen packets, and the pen packets themselves, the State proved Winston's prior felony convictions beyond a reasonable doubt. Accordingly, we agree with the State that the trial court's charge error did not cause some harm to Winston. *See Kucha v. State*, 686 S.W.2d 154, 156 (Tex. Crim. App. 1985) ("Considering that the evidence of the prior convictions was undisputed, uncontradicted, and seemed to have been taken almost as a "given" by the parties, we hold that the failure of the court to charge on the range of

---

defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. …

TEX. PENAL CODE ANN. § 12.42(d).

punishment if the enhancements were found to be untrue, was not so harmful that it deprived appellant of a fair and impartial trial."); *Segovia v. State*, 467 S.W.3d 545, 559-61 (Tex. App.—San Antonio 2015, pet. ref'd). We overrule issue two.

Winston asserts a *Batson* violation in issue three. The exclusion of a venire-member based on race violates the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986).

> Under *Batson*, a defendant may be entitled to "a new array" if he can demonstrate, by a preponderance of the evidence, that the prosecutor indulged in purposeful discrimination against a member of a constitutionally protected class in exercising his peremptory challenges during jury selection. As the process has been described by the Supreme Court:
>
> > Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.
>
> At the second step of this process, the proponent of the strike need only tender an explanation that is racially neutral on its face. The ultimate plausibility of that explanation is then considered under the third step of the analysis, in which the trial court determines whether the opponent of the strike has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of purposeful discrimination. Whether the opponent satisfies his burden of persuasion to show that the proponent's facially race-neutral explanation for his strike is pretextual, not genuine, is a question of fact for the trial court to resolve in the first instance.
>
> > A reviewing court should not overturn the trial court's resolution of the *Batson* issue unless it determines that the trial court's ruling was clearly erroneous. In assaying the record for clear error, the reviewing court should consider the entire record of voir dire; it need not limit itself to

arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record. But a reviewing court should examine a trial court's conclusion that a racially neutral explanation is genuine, not a pretext, with great deference, reversing only when that conclusion is, in view of the record as a whole, clearly erroneous.

*Blackman v. State*, 414 S.W.3d 757, 764-65 (Tex. Crim. App. 2013) (footnoted citations omitted).

Because the trial court conducted a *Batson* hearing, we must presume that Winston made a satisfactory prima facie case of purposeful discrimination. *See Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). The second step of the process does not demand an explanation that is persuasive, or even plausible. *Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). The issue is the facial validity of the prosecutor's explanation. *Id.* Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Id.*

It is not until the third step that the persuasiveness of the justification tendered for the strike becomes relevant. *Id.* "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Id.* In evaluating the genuineness of the State's proffered race-neutral reasons, we may consider: (1) whether the reason given is related to the facts of the case; (2) whether the State meaningfully questioned the challenged venire member; (3) whether persons with the same or similar characteristics as the challenged venire member were not struck; (4) whether there was disparate examination of the members of the venire; and (5) whether an explanation was based upon a group bias although the specific trait is not shown to

apply to the challenged juror. *Williams v. State*, 804 S.W.2d 95, 105-06 (Tex. Crim. App. 1991).

"Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies peculiarly within the trial court's province, we defer to the trial court in the absence of exceptional circumstances." *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010); *see Watkins*, 245 S.W.3d at 448 ("[A] reviewing court should examine the trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine, rather than a pretext, with great deference, reversing only when the conclusion is, in the view of the record as a whole, clearly erroneous."); *see also Blackman*, 414 S.W.3d at 765, 769-70.

The State used a peremptory strike on Juror No. 37, a black woman, and Winston asserted that the only reason she was struck was race. Winston made a prima facie showing that the State's strike may have been racially motivated. The state proffered two race-neutral reasons for striking Juror No. 37. First, she worked as a nurse's aide at Trinity Mission, a nursing facility, and the name of that facility implies a religious affiliation with a mission: helping and aiding those in need and lower-income people, showing her to maybe be more compassionate. While Juror No. 37 addressed the services provided at her workplace, the facility's name gave the State pause for the mission of the nursing facility as implied by its name.

The State's second race-neutral reason for striking Juror No. 37 was that she lived in an apartment complex known to the prosecutor to be fairly rough, and that could lead

her to be desensitized to crime and distrustful of the police. Winston argues that another venireperson resided on the same street as Juror No. 37 but was not struck by the State, but the State responds that the concern was not the street, but the particular apartment complex where Juror No. 37 lived.

The State additionally notes that it did not strike Juror No. 12, another black woman, who served on the jury. While each potential juror must be considered individually, all of the circumstances bearing on whether there was racial discrimination should be considered, and the fact that one of the two black potential jurors (a third, Juror No. 133, was outside the strike zone) in the strike zone served on the jury is a relevant circumstance to consider in a *Batson* review. *See Miller-El v. Dretke*, 545 U.S. 231, 239-40, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005). Therefore, according great deference to the trial court's denial of appellant's *Batson* challenge, we cannot say that the trial court's ruling is clearly erroneous. Issue three is overruled.

Having overruled Winston's three issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed October 29, 2015
Do not publish
[CRPM]

