

# NUMBER 13-17-00625-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JACOB LEE RIVAS,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

### On appeal from the 156th District Court
### of Bee County, Texas.

# MEMORANDUM OPINION
### Before Chief Justice Contreras and Justices Benavides and Longoria
### Memorandum Opinion by Justice Benavides

By one issue, appellant Jacob Lee Rivas challenges his conviction for murder. *See* TEX. PENAL CODE ANN. § 19.02(c). Rivas argues the trial court committed error by denying his request for a self-defense instruction. We affirm.

## I.    BACKGROUND

Rivas was charged by indictment for the murder of Serafin Gonzales. *See id.* At

trial, the testimony showed that on August 23, 2016, Chris Curtis, Sharon Underwood, and Gonzales were gathered at Curtis's home in Beeville. Curtis testified that Rivas visited his home two times that evening; the first time, Curtis asked him to leave and Rivas complied. Later Rivas returned, walked into the garage, but Curtis again asked him to leave. Curtis stated that as Rivas walked away, Rivas began taunting Gonzales. Gonzales followed Rivas, and they got into an altercation. Curtis saw Rivas throw the first punch and agreed that Gonzales threw some punches. Curtis then saw Rivas punch towards Gonzales's rib cage and hit him on his left side. As Gonzales walked back towards Curtis, Gonzales stated Rivas stabbed him, but Curtis did not see any blood. Curtis explained he ran after Rivas while carrying a pipe, but when he heard Underwood screaming, he ran back to the house. Curtis stated he did not see Gonzales with a weapon prior to or after the fight. He agreed that when he ran after Rivas, he was going to attack Rivas because he felt that his life was in danger.

Underwood testified that she saw Rivas twice that day as well; the first time it was just her and Curtis at his house. The next time, Rivas walked into the garage, sat next to Gonzales, and was asked to leave. Rivas walked outside, called to Gonzales, and they began fighting in the street. Underwood said that after the altercation, Rivas went one way and Gonzales another. As Gonzales approached the garage, he was dusting himself off with his t-shirt and stated to her, "that motherfucker stabbed me." Right after he said that, Gonzales collapsed, vomited blood, stood up and walked to the couch, and collapsed again. Underwood said she did not see anyone with a weapon prior to the fight but that Curtis grabbed something out of the garage and took off running after Rivas

2

when he heard Gonzales's statement. However, when he heard her yelling, Curtis came back and started CPR on Gonzales. Underwood stated that during the fight she just saw arms swinging but did not want to watch.

Yvette Cruz, Curtis's neighbor, also testified. Cruz explained she was on her way home from work when she saw Gonzales and Rivas fighting by the road and that she knew both of them. Cruz said she saw Rivas swing, run off, and she saw Gonzales walk up the sidewalk before collapsing. Cruz also testified that when she approached Curtis's home, she saw Gonzales with a wound to his upper left side. Cruz stated she did not see Curtis involved in the fight.

Beeville Police Department Detective Christopher Vazquez explained that he interviewed Rivas at the police department after he was detained. Detective Vasquez gave Rivas his *Miranda* warnings, but Rivas refused to sign a document acknowledging those warnings. Detective Vazquez stated that Rivas never claimed self-defense during the interview; instead Rivas kept saying he had nothing to do with Gonzales's murder. Rivas also stated that the red stains on his shorts were from Kool-Aid. Detective Vazquez explained that police collected a knife and clothing from Rivas, as well as additional knives from his home, and sent the items to the Texas Department of Public Safety (DPS) crime lab for analysis. Detective Vazquez agreed on cross-examination that Rivas kept saying that he thought the police were joking but that he would not sign anything.

Analysts from the DPS crime lab explained that Rivas's shorts, both of his shoes, and knife all contained a presumptive positive indicator for blood. However, they were

3

unable to gather a DNA profile from the knife. Although the analysts were unable to exclude Rivas or Gonzales as a contributor to the blood on Rivas's shorts, Rivas's shoes were determined to have Gonzales's blood on them. Additionally, Dr. Adel Shaker, the medical examiner, explained the findings from his autopsy. He stated that Gonzales had a wound that went through the left lung and into the right side of the heart, most likely made by a sharp instrument. Dr. Shaker found that Gonzales's death was due to a stab wound to the chest or heart. Dr. Shaker also testified that Gonzales had an "elevated" level of methamphetamines and amphetamines in his system at the time of his death.

During the jury charge conference, Rivas objected to the jury charge and requested a self-defense instruction. Rivas explained that there were witnesses who testified about a fight between himself and Gonzales; Rivas was outnumbered; Curtis testified that he had a deadly weapon; and Rivas's perception of an attack justified the instruction. Rivas also stated that forcing him to testify in order to receive a self-defense instruction would be a violation of the Fifth Amendment. The State countered by arguing there was no evidence that Curtis was involved in the altercation or that Gonzales used a deadly weapon. The trial court denied Rivas's request.

Rivas was found guilty of murder and sentenced to ninety-nine years' imprisonment in the Texas Department of Criminal Justice–Institutional Division and a $10,000 fine. This appeal followed.

## II.    JURY CHARGE ERROR

By his sole issue, Rivas alleges that the trial court committed reversible error by not giving a self-defense jury instruction.

## A. Standard of Review and Applicable Law

Under Texas law, the judge must provide the jury with "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14. This law requires the trial judge to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007).

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of the trial court's opinion about the credibility of the defense. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). This rule is designed to ensure that the jury, not the trial court, will decide the relative credibility of the evidence. *Id*. A defendant need not testify in order to raise a defense. *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.—Austin 2005, no pet.). Defensive issues may be raised by the testimony of any witnesses, even those called by the State. *Id*.

When reviewing a trial court's decision denying a request for a self-defense instruction, we view the evidence in the light most favorable to the defendant's requested submission. *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017); *see Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). A trial court errs in denying a self-defense instruction if there is some evidence, from any source, when viewed in the

light most favorable to the defendant, that will support the elements of self-defense. *Gamino*, 537 S.W.3d at 510; *see Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

According to § 9.31 of the Texas Penal Code, a person is justified in using force against another when and to the degree that the person reasonably believes the force is immediately necessary to protect himself against another person's use or attempted use of unlawful force. *Gamino*, 537 S.W.3d at 510 (citing TEX. PENAL CODE ANN. § 9.31). The use of force against another is not justified in response to verbal provocation alone. TEX. PENAL CODE ANN. § 9.31(b)(1). Under Texas Penal Code § 9.32, a person is justified in using deadly force if he would be justified in using force under § 9.31, and he reasonably believes that deadly force is immediately necessary to protect him against another's use or attempted use of deadly force. *Id.* § 9.32(a)(1), (2)(A).

Appellate review of purported error in a jury charge involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether the jury charge is erroneous. *Id.* Second, if error occurred, then an appellate court must analyze that error for harm. *Id.*

If "an error is preserved with a timely objection . . . then the jury-charge error requires reversal if the appellant suffered some harm as a result of the error." *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). The Texas Court of Criminal Appeals "has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal." *Rodriguez v. State*, 456 S.W.3d 271, 280 (Tex. App.—Houston [1st

6

Dist.] 2014, pet. ref'd). To establish harm, the "appellant must have suffered actual, rather than theoretical, harm." *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) (citing *Almanza*, 686 S.W.2d at 171). Neither the State nor the appellant bears the burden on appeal to prove harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

**B.    Discussion**

In this case, as in *Gamino*, Rivas requested that a self-defense charge be given to the jury. He did not specify whether § 9.31 or § 9.32 applied. *See Gamino*, 537 S.W.3d at 511. However, as a general rule, the requested charge need only be sufficient "to bring the request to the trial court's attention." *Id*. (quoting *Chapman v. State*, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996)). In support of the self-defense instruction, Rivas argued to the trial court there was sufficient evidence supported by the record.

Though we must view the evidence in the light most favorable to the defendant to determine if a defensive issue should have been submitted, no error is shown in the denial of a defensive instruction if the evidence establishes as a matter of law that the defendant is not entitled to rely on this defense. *Johnson v. State*, 157 S.W.3d 48, 50 (Tex. App.—Waco 2004, no pet.). Accordingly, the defendant is not entitled to a self-defense instruction if the evidence establishes as a matter law that one of the exceptions to the justification of self-defense listed in § 9.31(b) applies. *Id*. (citing TEX. PENAL CODE ANN. § 9.31(b)). As pertinent to Rivas's case, § 9.31(b) states:

The use of force against another is not justified:

(1)    in response to verbal provocation alone;

7

. . .

(3)    if the actor consented to the exact force used or attempted by the other;

(4)    if the actor provoked the other's use or attempted use of unlawful force, unless:

    (A)    the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

    (B)    the other nevertheless continues our attempts to use unlawful force against the actor.

TEX. PENAL CODE ANN. § 9.31(b)(1), (3), (4).

Rivas argues that, because he began to leave after Curtis asked him to and Gonzales followed him down the driveway while removing his shirt, he was entitled to the self-defense charge. He also alleges that, because he began walking down the driveway in a "direction of retreat," his movement satisfies the requirement of an "attempt to abandon the encounter" and therefore, justifies a self-defense instruction. *See id*. § 9.31(b)(4)(A). Additionally, Rivas notes that Gonzales had an "elevated" level of methamphetamine in his system at the time of death, and he argues that resorting to a knife was necessary for his own safety and protection against the "amphetamine-enhanced Gonzales."

However, based on the testimony of other witnesses at the scene, Rivas was the one who sought out the individuals gathered in Curtis's garage. Both Curtis and Underwood testified that Rivas began "taunting" Gonzales as he walked down the driveway after being asked to leave. Curtis testified that Rivas was the one who threw the first punch, and then Gonzales punched back. Curtis, Underwood, and Cruz all saw

8

both men fight until they both went their separate ways. It was at that time that Gonzales stated to Curtis and Underwood, who had been near the garage, that Rivas had stabbed him.

A defendant may forfeit his right to self-defense if he provokes the attack. *See id*. § 9.31(b)(4). Based on the evidence presented, the trial court could reasonably believe that Rivas either consented to the exact force used by Gonzales in fighting him or that Rivas provoked Gonzales's use of force in response to Rivas's initial use of force. *See id*. § 9.31(b); *see also Elizondo v. State*, 487 S.W.3d 185, 196 (Tex. Crim. App. 2016) (holding that a defendant can forfeit his right to claim self-defense). We hold that the trial court did not err in denying Rivas's request for a self-defense instruction.

Because we find the trial court did not error in denying Rivas his self-defense jury charge request, we do not need to evaluate for harm. Therefore, we overrule Rivas's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
3rd day of July, 2019.