# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00257-CR

**Sabien Armonte Taplin, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 426TH DISTRICT COURT OF BELL COUNTY
### NO. 79999, THE HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I respectfully dissent because the evidence, when viewed in the light most favorable to Taplin, was sufficient to raise an issue about whether he reasonably believed that using force against Alanis was immediately necessary to protect against Alanis's use or attempted use of unlawful force. *See* Tex. Penal Code § 9.31; *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020); *Smith v. State*, 676 S.W.2d 584, 585 (Tex. Crim. App. 1984); *VanBrackle v. State*, 179 S.W.3d 708, 712–14 (Tex. App.—Austin 2005, no pet.).

Alanis and another testifying officer described the distance at which a jailer should keep an inmate. According to Alanis, it is not "best practices in law enforcement in a jail situation to allow an inmate to come up to you and get this close this fast." According to Officer Anthony Hinds, arm's length is "good enough" for a friendly inmate–officer conversation, but any closer is too close. So when Taplin first got that close to Alanis, Alanis testified, he wanted to

"try[] to control the situation" by putting his left hand on Taplin near the latter's right side and shoulder.

However, what happens next, as the video admitted at trial reveals, is quite different from Alanis's testimony. Viewing the video in the light most favorable to Taplin, as we must, reveals that Taplin moved closer to Alanis again. Alanis added his right hand on Taplin near Taplin's left arm and straightened his arms to move Taplin away. Then Taplin knocked Alanis's hands away. Right after that, Alanis quickly re-placed his hands on Taplin and pushed him. Taplin again knocked Alanis's hands away, as before but faster, and Taplin ended up with his back pushed up against the wall. At that point, he was again at arm's length from Alanis. While Taplin was in this position, Alanis quickly closed the distance between the two, putting his hands on Taplin near Taplin's shoulders and neck. Taplin then put his hands on Alanis near the latter's shoulders. This began what Alanis called the "altercation." In the altercation, Taplin tried to grab Alanis on his neck and strike him and in at least one instance succeeded by landing an uppercut near Alanis's face. Other officers then ran to help Alanis and eventually succeeded in restraining Taplin so that Alanis could walk away to deescalate the situation.

Taplin argues that these facts support "a reasonable inference, . . . however slight or incredible the inference may have been, that Taplin's response to Alanis was *defensive* in nature" so that "a reasonable and rational juror could have concluded that Taplin was afraid of being beaten by Alanis, and that he therefore acted in self-defense when Alanis placed his hands on his chest despite the disparity in their positions and authority." He adds that "[a] reasonable inference may be made that, not only did Taplin believe the false information he had been given [about his brother], he was fearful that the same fate might await him at Alanis' discretion."

2

I am persuaded and conclude that there was sufficient evidence to raise self-defense because of the combination of (1) the statement, though ultimately false, about Alanis having assaulted Taplin's brother, *see ante* at __ n.1, and (2) Alanis's actions just before the altercation, when Taplin was backed against the wall. Before that point, Alanis had put both of his hands on Taplin twice, and, according to Alanis's testimony on cross-examination, Taplin had not become physical until Alanis's hands were on him. Both times, Taplin knocked Alanis's hands away. After the second time, Alanis pushed him. The two men were then at arm's length with Taplin backed against the wall. They were no longer within the distance at which, according to Alanis and Hinds, an officer would need to get control of the situation by placing hands on the inmate. Alanis then quickly closed the arm's-length distance and placed his hands on Taplin near his neck.

A rational juror could have concluded that, viewed through the prism of the comment about Taplin's brother, Taplin reasonably believed that he needed to use force to protect himself from a use or attempted use of unlawful force by Alanis. From Taplin's point of view, and viewed in the light most favorable to him, the evidence sufficed to raise self-defense. *See Jordan*, 593 S.W.3d at 343; *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017); *Reed v. State*, 703 S.W.2d 380, 384 (Tex. App.—Dallas 1986, pet. ref'd) (per curiam) ("The statute necessarily contemplates that the force used by a defendant must be reasonable as contemplated from the defendant's point of view." (citing *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984))); *see also VanBrackle*, 179 S.W.3d at 712 ("A defendant need not testify in order to raise a defense. Defensive issues may be raised by the testimony of any witnesses, even those called by the State." (internal citation omitted)).

The State does not argue that Taplin was not entitled to a self-defense instruction because the evidence established as a matter of law that Taplin provoked Alanis. *Cf. Dyson*,

672 S.W.2d at 463–65; *Johnson v. State*, 157 S.W.3d 48, 50 (Tex. App.—Waco 2004, no pet.). The State's argument is only that "[t]here was not . . . the slightest shred of evidence that [Taplin] reasonably believed it was necessary to prevent unlawful force by" Alanis. The governing standards allow for a weak, contradicted, impeached, or not credible interpretation of the evidence to suffice to raise self-defense. *See Jordan*, 593 S.W.3d at 343; *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *VanBrackle*, 179 S.W.3d at 712. Every piece of evidence supporting self-defense here may suffer from those flaws. But the pieces are still here.

The majority opinion's conclusion to the contrary relies on *Alexander v. State*, No. 03-14-00290-CR, 2016 WL 286385 (Tex. App.—Austin Jan. 21, 2016, pet. ref'd) (mem. op., not designated for publication). *See ante* at __–__ (citing and then applying *Alexander*). *Alexander* is not precedent, Tex. R. App. P. 47.7(a); *Morris v. State*, 361 S.W.3d 649, 657 & n.34 (Tex. Crim. App. 2011) (refusing to cite unpublished cases "as authority" due to Rule 47.7), and it is distinguishable. *Alexander* involved an assault family violence by Michael Alexander against Darnise Bowens. *See* 2016 WL 286385, at *1. Both Bowens and a friend of Alexander's testified about the underlying altercation, but, quite differently from this case, no video of it was in the record. *See id.* at *2. The friend testified that Alexander considered Bowens to have been angry and upset during their altercation. *Id.* at *2, 4. Bowens testified that Alexander started the altercation by putting his arm around her neck with such force that she thought he would break it. *Id.* at *2. She then injured Alexander while trying to flee, including biting his arm, cutting his lip, and punching him. *Id.* at *2, 4. This Court could not conclude that the trial court's refusal to give a self-defense instruction was error because there was no evidence "from which a reasonable fact-finder could infer that Alexander was in 'apprehension or fear' of Bowens at any point during

4

the altercation or that Alexander had a reasonable belief that his use of force against Bowens was immediately necessary to protect himself from any unlawful force" by her. *Id.* at *4.

By contrast here, there was objective evidence to support "observable manifestations," *see VanBrackle*, 179 S.W.3d at 714, of Taplin's asserted apprehension or fear. The video shows Taplin backed against the wall and beyond the distance at which the officers testified that they would need to use force to control an inmate. The video also shows Alanis pushing Taplin and then quickly closing the distance between the two men and putting his hands near Taplin's neck. Alanis also admitted that Taplin only became physical after he put his hands on Taplin. And there is the statement—nothing like which is in *Alexander*—that Alanis had assaulted Taplin's brother.

I recognize that, to some reasonable jurors, this might be a weak or non-credible interpretation of the evidence. But even weak and non-credible evidence can raise self-defense for the jury either to accept or reject. *See VanBrackle*, 179 S.W.3d at 714 ("We caution that we express no opinion regarding the credibility of the witnesses or the relative weight of their testimony, the proper inferences to be drawn from the evidence, or the reasonableness of appellant's conduct. We hold only that the evidence adduced at trial was sufficient to raise a jury issue regarding the use of deadly force in self-defense. Whether the events in question actually transpired in the manner described by the defensive testimony and whether appellant's conduct was reasonable under the circumstances are fact issues to be determined by a jury.").

The majority opinion puts some weight on its view that Taplin "aggressively approach[ed] and threaten[ed] Alanis," but words or actions like Taplin's might instead go to the need for a provocation instruction. *See* Tex. Penal Code § 9.31(a)(2), (b)(4); *Elizondo v. State*, 487 S.W.3d 185, 197 (Tex. Crim. App. 2016) ("[A] charge on provocation is required when there

5

is sufficient evidence (1) that the defendant did some act or used some words that provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other." (citing *Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998))). Even if the State requested such an instruction, which it did not, a provocation instruction is given in tandem with a self-defense instruction. Despite potential provocation here, we still must review the other evidence that supports self-defense and view it in the light most favorable to Taplin. *See Johnson*, 157 S.W.3d at 52 (reasoning that, although evidence may suffice to support provocation instruction, trial court must still instruct jury on self-defense if "evidence does not establish as a matter of law that [defendant] provoked the confrontation" (citing *Dyson*, 672 S.W.2d at 463–65)).

I would reverse the judgment of conviction and remand for further proceedings. Because the majority opinion concludes otherwise, I respectfully dissent.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Filed: October 15, 2020

Do Not Publish

6